IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE BLACK 2022 MERCEDES GLC with VIN # W1N0G8EBXNV380942, THAT IS STORED AT PREMISES CONTROLLED BY VERIZON | Case No.: 22-SW-299 LDA<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Deputy U.S. Marshal Brenton Moore, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a black 2022 Mercedes GLC bearing RI license plate number 1IR257, VIN# W1N0G8EBXNV380942 (the "Subject Vehicle"), that is stored at premises controlled by Verizon, a wireless telephone service provider headquartered at Parsnippy, NJ. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Verizon to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Deputy U.S. Marshal with the U.S. Marshal's Service, and have been since January 2011. I have received extensive training in criminal investigations. I have graduated from the Criminal Investigators Training Academy and United States Marshals Service Basic

Training Class.  Both are located at the Federal Law Enforcement Training Center in Glynco, GA. I have received additional training in various areas of law enforcement, including the apprehension of fugitives.  My current primary assignment is the apprehension of violent federal and state fugitives, and I am assigned to the Rhode Island Violent Fugitive Task Force.  I have worked on numerous successful investigations of fugitives from this Court and also in conjunction with members with other federal, state and local law enforcement agencies.  I have prepared numerous affidavits in support of applications for federal search warrants and pen register authorizations.

3. I have conducted numerus fugitive cases of locating and apprehending fugitives by cellular devices and vehicle telematics.  The telematics of a vehicle provide global positioning technology in tracking a vehicle in real time or historical data.  In my experience in tracking vehicles from the telematic system it is known that the vehicle utilized, was a 2022 Mercedes equipped with a Verizon cellular number.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1073 (Flight to Avoid Prosecution) and 18 U.S.C. § 401(3) (Criminal Contempt) have been committed, are being committed, and will be committed by Thomas H. Huling.  There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

**PROBABLE CAUSE**

6.  On September 13, 2022, the U.S. Marshal's Service in the District of Rhode Island was notified that U.S. District Court Judge Mary S. McElroy had issued a warrant for the arrest of Thomas H. Huling, the defendant in the criminal matter <u>United States v. Huling</u>, Cr. No. 19-37. Huling had failed to appear for jury empanelment which was scheduled for 9:30 a.m. on September 13, 2022, and his whereabouts were unknown.

7.  Upon being assigned to locate and arrest Huling pursuant to the district court's warrant, I spoke with U.S. Probation Officer Christina Woishnis at the U.S. Probation Office for the District of Rhode Island. Woishnis was Huling's supervisory probation officer. She provided me with Huling's address, 724 Centreville Rd, Unit 2, Warwick, RI, and his cellular telephone number. She said the last time she saw him he had been using a silver Mercedes or BMW. She said that she had been trying to call him but that the phone was off.

8.  After speaking with USPO Woishnis, members of the Rhode Island Violent Fugitive Taskforce [hereinafter the "Taskforce"] and I proceeded to Huling's residence in Warwick. There we encountered Susan Buontempo, the owner of the condominium in which Huling supposedly resided. Huling was not on the premises. Buontempo told us that she had not seen Huling since Sunday. She said that she tried calling him and had tried to text him multiple times between Sunday and the morning of September 13, 2022. She said she had been unable to reach him. Buontempo stated that she did not know where Huling was.

9.  Buontempo showed me the bedroom in which Huling had been living. It was completely emptied of any sign of Huling. Specifically, I observed no male clothing, no male shoes, no mail, no medication, and no personal effects that appeared to belong to Huling or any

other male occupant of the premises. The only clothing in the bedroom supposedly used by Huling was female clothing. According to Buontempo, she had woken up on Monday to find everything Huling owned to be gone.

10. I asked Buontempo what vehicle Huling used. She said he drove a Mercedes or BMW, but that he currently had a "loaner" vehicle from the Inskip dealership down the road (in Warwick) because his vehicle was in the shop. She said the "loaner" was a black Mercedes SUV. According to Buontempo, Huling's vehicle needed a "part." She stated that his vehicle was registered in her name. I noted that neither Huling's vehicle (registered to Buontempo), nor the supposed "loaner" vehicle, was parked at Buontempo's condominium.

11. A member of the Taskforce contacted an employee of Inskip about the vehicle loaned to Huling and confirmed that the dealership had loaned him a black Mercedes SUV. The employee identified the vehicle that had been given to Huling as bearing Rhode Island license plate 1IR257. The Taskforce has determined that the Subject Vehicle's VIN # is W1N0G8EBXNV380942 based upon a RILETS query.

12. The Subject Vehicle was located by members of the Taskforce about 50 yards down the street from Buontempo's condominium on September 14, 2022. It was parked on the cul-de-sac. Members of the Taskforce returned the vehicle to Inskip.

13. On September 14, 2022, I obtained paperwork from Inskip regarding the Subject Vehicle provided to Huling. It is entitled "Rental Agreement" and is dated August 31, 2022. It does not list any rental charges to be assessed to Huling. It also provides that "Customer acknowledges that vehicle may be equipped with a tracking device with global positioning

technology that allows the dealership in its discretion to acquire data regarding the location of the vehicle and other operational data." In my experience I have tracked cellular devices and vehicles equipped with Telematics. The telematics of a vehicle provide global positioning technology in tracking a vehicle in real time or historical data. In my experience in tracking vehicles from the telematic system it is known that the vehicle utilized by Huling was a 2022 Mercedes equipped with a Verizon cellular number.

14.     In my training and experience, I have learned that Verizon is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

15.     Based on my training and experience, I know that Verizon can collect cell-site data about the SUBJECT VEHICLE which uses Verizon services as part of its telematics system. I also know that wireless providers such as Verizon typically collect and retain cell-site data

pertaining to devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

16.     Based on my training and experience, I know that Verizon also collects per-call measurement data, which Verizon also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

17.     Based on my training and experience, I know that wireless providers such as Verizon typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as Verizon typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to provide location information regarding the SUBJECT VEHICLE's user or users.

## AUTHORIZATION REQUEST

18.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

19.     I further request that the Court direct Verizon to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or

control. Because the warrant will be served on Verizon who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Brenton Moore
Deputy U.S. Marshal
U.S. Marshal's Service

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by **Telephone**.
(*specify reliable electronic means*)

| Date | Judge's signature |
|---|---|
| City and State | Printed name and title |

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the BLACK 2022 MERCEDES GLC assigned VIN # W1N0G8EBXNV380942 ("the Account"), that are stored at premises controlled by Verizon Wireless ("the Provider"), headquartered at Bedminster, NJ.

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period August 30, 2022 – September 14, 2022:

a. The following information about the customers or subscribers of the Account:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

  viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

  i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

  ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received as well as per-call measurement data (also known as the "real-time tool" or "RTT" data)].

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 1073 and 18 U.S.C. §§ 401(3) and 402 involving Thomas H. Huling during the period August 30, 2022 – September 14, 2022.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC
RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE
902(11) AND 902(13)**

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by [**PROVIDER**], and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of [**PROVIDER**]. The attached records consist of _____ [**GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)**]. I further state that:

   a.   all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of [**PROVIDER**], and they were made by [**PROVIDER**] as a regular practice; and

   b.   such records were generated by [**PROVIDER'S**] electronic process or system that produces an accurate result, to wit:

      1.   the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of [**PROVIDER**] in a manner to ensure that they are true duplicates of the original records; and

    2.  the process or system is regularly verified by **[PROVIDER]**, and at all times pertinent to the records certified here the process and system functioned properly and normally.

  I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____  _____
Date            Signature